1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  ANITA HERNOKO,                )
                                  )
12          Plaintiff,            )     No. 05-3163 BZ
                                  )
13      v.                        )     **ORDER GRANTING PLAINTIFF'S**
                                  )     **MOTION FOR SUMMARY JUDGMENT**
14  JOANNE B. BARNHART,           )     **AND DENYING DEFENDANT'S**
    Commissioner of Social        )     **CROSS-MOTION FOR SUMMARY**
15  Security                      )     **JUDGMENT**
                                  )
16          Defendant.            )
    _____)

17

18      Plaintiff Anita Hernoko timely appeals from a final

19  decision by the Commissioner of Social Security (the

20  "Commissioner") under 42 U.S.C. § 405(g) denying review of the

21  Administrative Law Judge's ("ALJ") decision.  In her motion

22  for summary judgment, she asks that the case be remanded with

23  instructions to award disability benefits.  Defendant has made

24  a cross-motion for summary judgment.  Because the Appeals

25  Council denied review, the decision of the ALJ becomes the

26  decision of the Commissioner for purposes of review.  The ALJ

27  found that since plaintiff was capable of performing light

28  work with certain restrictions, she was not disabled and

                                  1

1  therefore not eligible for disability benefits.  Tr. at 20.

2       The Commissioner's decision to deny benefits will be

3  disturbed only if it is not supported by substantial evidence

4  or is based on legal error.  42 U.S.C. § 405(g); Batson v.

5  Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir.

6  2004); Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).

7       The alleged onset of plaintiff's disability was September

8  13, 2001, when she was dismissed after three years from her

9  job as an administrative assistant.  This job involved lifting

10 packages, filing and sitting at her desk for several hours.

11 Plaintiff's disability, back and neck pain, resulted from her

12 fall when her office chair broke on March 30, 2000.  Plaintiff

13 returned to work but her pain worsened, and she had to miss

14 work often because of her back pain and doctors' appointments.

15 Plaintiff claims her employer discharged her because of this.

16 On June 6, 2003, plaintiff applied for disability benefits.

17 After denials initially and upon reconsideration, plaintiff

18 filed a timely request for an administrative hearing, which

19 occurred on January 5, 2005.  The ALJ denied plaintiff's

20 application on March 23, 2005, and the Appeals Council

21 subsequently denied plaintiff's request for review.

22      Following the standard five step process for evaluating

23 plaintiff's claim, see 20 C.F.R. § 404.1520, the ALJ found at

24 step one that she had not engaged in substantial gainful

25 activity since September 13, 2001.  Tr. at 13.  At step two,

26 the ALJ accepted that a combination of plaintiff's

27 impairments, including obesity, abdominal pain,

28 osteoarthritis, myofascial pain syndrome and depression,

interfered with her ability to perform basic work.  Id.  At
step three, the ALJ found that none of her impairments, or a
combination, met the severity for any of the Listed
Impairments in Appendix 1 to Subpart P of Social Security
Regulations No. 4.  Id.  At step four, the ALJ found that
plaintiff could not perform her past work.  Tr. at 18.  Once a
claimant establishes that she cannot perform past work, the
burden shifts to the Commissioner to determine if there is a
significant number of other jobs that she can perform.  At
step five, the ALJ found that plaintiff could perform two
types of jobs:  Small Products Assembler and Cashier II.  Id.

     Plaintiff contends that the ALJ committed legal error
because he improperly rejected the opinion of plaintiff's
treating physician and the subjective testimony of plaintiff
and her husband; and the ALJ posed an incomplete hypothetical
question to the vocational expert at the hearing.  Because at
least one of these contentions has merit, the ALJ's decision
contains legal error, and the case must be remanded.

     Because a treating doctor is familiar with the patient's
history, her opinion deserves greater weight than the opinions
of other physicians.  Rodriquez v. Bowen, 876 F.2d 759, 761-62
(9th Cir. 1989).  In order to reject an uncontroverted
treating doctor's ultimate conclusions, the ALJ must provide
"clear and convincing" reasons.  Lester v. Chater, 81 F.3d
821, 830 (9th Cir. 1995)(quoting Embrey v. Bowen, 849 F.2d
418, 422 (9th Cir. 1988)); Rodriquez, 876 F.2d at 762.  Even
if another doctor's opinion contradicts that of the treating
physician, the ALJ must provide "'specific and legitimate

3

1   reasons' supported by substantial evidence" to reject the

2   opinion of the treating physician.  <u>Lester</u>, 81 F.3d at 830

3   (quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir.

4   1983)); <u>Embrey</u>, 849 F.2d at 421.  To say only that the

5   objective findings do not support the treating physician's

6   conclusions is inadequate.  <u>Embrey</u>, 849 F.2d at 421.

7   Furthermore, the subjective elements of a treating physician's

8   opinion are also important and should be given substantial

9   weight.  The ALJ may disregard them only with clear and

10  convincing reasons.  <u>Id.</u>

11       Plaintiff's treating doctor, Dr. Jonathan Francis, is a

12  pain management specialist who has been seeing plaintiff since

13  September 2001.  On September 14, 2001, Dr. Francis

14  recommended plaintiff refrain from working and instead seek

15  additional treatment.  Tr. at 297-98.  On March 30, 2004,

16  based on three years of treatment, Dr. Francis felt that

17  plaintiff was still not able to return to work because of pain

18  and, possibly, depression.  Tr. at 230.  The objective

19  findings to support his conclusion were limited mobility and

20  function of the lumbar and cervical spinal areas.  Plaintiff's

21  MRI showed reduced foramina and osteoarthritic changes in

22  areas of her cervical spine, as well as exaggerated lumbar

23  lordosis of the lumbar spine.  Tr. at 229.  Dr. Francis

24  further found that plaintiff's claims of pain were credible

25  and that she was unable to walk for more than one to two hours

26  per day.  He stated that she could sit for only an hour at a

27  time with a fifteen minute break, for a total of three hours

28  per day.  Dr. Francis opined that plaintiff would not be able

1    to appear at a job consistently, and she would be unable to
2    work at all one to two times per week.  Id.  He corroborated
3    plaintiff's complaints of increasing pain, explaining that
4    "[i]n some patients, the fascial inflammation can take some
5    time to resolve after the injury."  Id.
6        The ALJ discredited Dr. Francis' opinion because he
7    characterized it as "based primarily on claimant's subjective
8    complaints" and because it was contradicted by a non-treating
9    physician, Dr. William A. Jackson Ross, Sr.  Dr. Ross is an
10   orthopaedic surgeon who saw plaintiff once in 2001, in
11   connection with plaintiff's worker's compensation claim.  Tr.
12   at 17.  The ALJ found Dr. Ross' report to be the most
13   credible.  The reports of the other doctors fell between Dr.
14   Ross' findings and Dr. Francis' recommendations, with Dr. Mark
15   Chan, her previous treating physician, recommending vocational
16   modifications and Dr. Stephen Dell, a neurosurgeon, remarking
17   on "the persistence of [plaintiff's] symptoms so many months
18   after injury."  Tr. at 150.  Similar to the other doctors, Dr.
19   Robert Fox, a neurologist, concurred in the diagnosis of back
20   strain and myofascial pain syndrome.  Tr. at 213.  He did not
21   address plaintiff's ability to work.
22       State agency medical consultants did consider plaintiff's
23   ability to work in August 2003 and December 2003, finding a
24   residual functional capacity ("RFC") for medium work and
25   recommending plaintiff return to her prior work with limits on
26   bilateral reaching and heavy lifting.  Tr. at 200, 223.  The
27   ALJ disagreed, deeming plaintiff's RFC was for light work but
28   "the limit to only occasional reaching [was] not warranted by

the medical evidence." Tr. at 17.   During the administrative
hearing, the ALJ asked the vocational expert if there were any
jobs at the light or sedentary levels that fit a hypothetical
of no reaching or lifting at or above the shoulder level
repetitively.  When the vocational expert responded that there
were no such jobs, the ALJ suggested bench assembly.  Tr. at
436.  After further clarification, the vocational expert
agreed that bench assembly would involve repetitive use of the
hands at desk level but not anything at or above shoulder
level.

     The ALJ accorded Dr. Francis' opinion less weight because
he concluded that the doctor "recognizes that the objective
findings do not support [plaintiff's] reported level of pain,
suggests psychological factors, but then opines rather extreme
limitations."  Id.  Not only did this analysis fail to list
with specificity and clarity the reasons for rejecting Dr.
Francis' opinion, it mischaracterized it and improperly
purported to rely on some portions of it while ignoring
others.

     Dr. Francis did not state that his objective findings did
not support the level of pain reported, as the ALJ concluded.
Tr. at 15.  Dr. Francis actually stated that while the
findings for plaintiff's "pain symptoms are not terribly
severe," and "there may be some contribution from
psychological factors, likely some depression, . . . I do not
feel that [plaintiff] is able to return to work."  Tr. at 230.
Dr. Francis also stated that he had "no reason at all to feel
that [plaintiff was] exaggerating her symptoms."  Id.

The ALJ likewise misinterpreted Dr. Francis' statement that he was "hopeful that [plaintiff's] symptoms would diminish within the next one to two years," Tr. at 230, to mean that plaintiff's "symptoms should diminish in the next one to two years," Tr. at 15, undermining plaintiff's claims of worsening pain.  Tr. at 17.  Throughout his analysis of the report of the treating physician, instead of according it the weight to which it was entitled, the ALJ improperly singled out certain statements, which he mischaracterized, while ignoring the bulk of Dr. Francis' conclusions, which supported plaintiff.  See Bergfield v. Barnhart, 361 F.Supp.2d 1102, 1113 (D. Ariz. 2005)(ALJ improperly relied on doctor's conclusion that condition was stable while ignoring conclusion that condition was disabling); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984).

The ALJ also erred in failing to articulate specific, legitimate reasons for disregarding the treating physician's opinion.  Embrey, 849 F.2d at 421.  He did not explain why he thought his interpretation of the evidence was correct, and did not give proper weight to Dr. Francis' interpretation of the subjective complaints of his patient.  Id.

Additionally, the ALJ improperly dismissed subjective testimony by plaintiff and her husband.  While the ALJ's credibility determinations are entitled to deference, once a claimant produces objective evidence of an impairment that could cause pain, the ALJ may not discredit the claimant's allegations of pain, even when there is insufficient evidence to fully corroborate the severity of the pain, without making

specific findings.  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345

(9th Cir. 1991); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th

Cir. 1996)(citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th

Cir. 1993))[1]; <u>see also</u> <u>Lester</u>, 81 F.3d at 834 ("Unless there

is affirmative evidence showing that the claimant is

malingering, the Commissioner's reasons for rejecting the

claimant's testimony must be clear and convincing.")(internal

quotation marks omitted).

     Plaintiff testified that because of her pain, she could

not concentrate and had to adjust her position every hour,

massaging her back and treating it with hot packs.  She

testified that she must spend two to three hours everyday

lying down because of the pain.  Tr. at 425-26.  The ALJ's

reasons for dismissing her testimony are not clear and

convincing.  The ALJ did not find plaintiff credible because

her treating physician had only recommended conservative

treatment and plaintiff consistently declined stronger pain

medications.  Tr. at 17.  But plaintiff's treating physician

explained that her "extreme[] reluctance to take medication"

curtailed his willingness to prescribe more serious pain

medication.  Tr. at 229.  At the administrative hearing,

_____

[1]     Defendant argues that <u>Dodrill</u> and its progeny relied
on an earlier version of 20 C.F.R. § 404.1513(d), which was
superseded in 2000.  Even so, <u>Dodrill</u> appears to remain good
law.  In 2001, the Ninth Circuit cited it for the proposition
that an ALJ should take into account lay witness testimony
unless the ALJ expressly determines to disregard such
testimony.  <u>Lewis</u>, 236 F.3d at 511.  <u>Lewis</u> also cited <u>Vincent
v. Heckler</u>, 739 F.2d 1393 (9th Cir. 1984), which defendant
cites for the proposition that the ALJ need not expressly give
reasons for disregarding lay witness testimony.  In <u>Vincent</u>,
however, the lay witness testimony conflicted with the medical
evidence; that is not the case here.

1  plaintiff attributed her reluctance to take strong medications
2  to her fear that they could cause heart attacks or strokes and
3  exacerbate her other health conditions for which she was
4  already taking medications.  Tr. at 428.  She also stated that
5  many medications upset her stomach, heartburn or ulcer.  Id.
6  In light of her belief that "medicine is not going to help"
7  and make her gain weight, when her doctors had already
8  diagnosed her as obese, plaintiff's desire to eschew strong
9  medications is understandable.  Tr. at 429.  "Where a claimant
10 provides evidence of a good reason for not taking medication
11 for her symptoms, her symptom testimony cannot be rejected for
12 not doing so."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.
13 1996).  Plaintiff also testified that alternative treatments,
14 such as physical therapy and massage, seemed to work better
15 than medications.  Tr. at 427.

16     Second, the ALJ cited plaintiff's "extensive travel" as a
17 reason to discount her pain testimony.  Tr. at 16.  He
18 remarked that travel over long distances would likely be
19 painful for someone in plaintiff's condition.  Id.  The
20 "extensive travel" consisted primarily of a trip to Indonesia
21 in 2001 to attend her father's funeral and a trip to Indonesia
22 a year later to visit her mother; trips which do not suggest
23 travel for pleasure.  And airplane travel is different from
24 work.  During airplane travel, plaintiff would presumably not
25 have to concentrate as she would during a job.  She generally
26 would be able to move, stand and change positions as needed.
27 "The Social Security Act does not require that claimants be
28 utterly incapacitated to be eligible for benefits."

1  Bergfield, 361 F.Supp.2d at 1112.  See also Gallant v.

2  Heckler, 753 F.2d 1450, 1453-54 (9th Cir. 1984)(reversing and

3  remanding for benefits in a similar case, where the claimant

4  suffered back pain but could take care of himself, cook, swim

5  and walk).

6      The ALJ also should have articulated his reasons for

7  discounting plaintiff's husband's testimony, identifying the

8  medical evidence on which he was relying.  "[T]estimony from

9  lay witnesses who see the claimant every day is of particular

10  value."  Smolen, 80 F.3d at 1289.  Plaintiff's husband

11  observes his wife every day and can explain or discuss her

12  daily behavior.  He testified that his wife's condition has

13  deteriorated.  She suffers from "constant back pain, shoulder

14  pain, to the point where she just has to lay in the bed."  Tr.

15  at 419.  She cannot walk very far, and she cannot bend to pick

16  up items on the floor.  Tr. at 420-21.  He has taken on most

17  of the household chores because plaintiff's pain precludes her

18  from doing laundry, taking out the garbage or lugging

19  groceries.  He must give her frequent massages to ease her

20  pain.  Because her insurance and workers' compensation have

21  stopped covering her, plaintiff and her husband pay for her

22  weekly or biweekly massage treatments out of their own

23  pockets.  Tr. at 420.  In summarizing but not addressing this

24  testimony, the ALJ committed legal error.

25      Finally, the ALJ erred in his hypotheticals to the

26  vocational expert during the administrative hearing.  The

27  ALJ's hypothetical assumed no repetitive use at or above the

28  shoulder level for the upper extremities.  Tr. at 435-36.

10

After some prodding from the ALJ, the expert testified that
there were two types of jobs that plaintiff could perform:
Small Products Assembler and Cashier II.  Tr. at 438-39.
However, the ALJ's hypothetical did not include the "moderate
limitation in her ability to maintain concentration,
persistence, and pace," which the ALJ found to be present.
Tr. at 17.  Furthermore, the ALJ assumed that plaintiff had no
limitations on the number of hours she could stand per day.
Although Dr. Francis, plaintiff's treating physician, did not
discuss this specific limitation, it is unreasonable to assume
that plaintiff could stand for five hours to complete a full
eight-hour workday, when she would not be able to sit for more
than three hours every day and walk for more than one to two
hours per day.  Tr. at 230.  When plaintiff's attorney asked
the vocational expert the number of jobs available for a
person who could sit for only three hours per day, the
vocational expert replied that there were no such jobs because
that precluded working a full eight-hour day.  Tr. at 442.
The ALJ asked the vocational expert to assume that plaintiff
could stand for five hours, and the vocational examiner then
agreed plaintiff could perform the assembler and cashier jobs.
The ALJ further clarified there was no need for plaintiff's
attorney to ask about "[a]ny combination of factors that
reduces the sit/stand/walk below eight hours a day" because
"by definition they can't work," which was the point of the
attorney's hypothetical.  Tr. at 443.  Because plaintiff
cannot sit and/or stand for eight hours, there are no jobs
available for her.  Without these additional limitations, the

1   hypotheticals provide no valuable evidence.  <u>Gallant</u>, 753 F.2d

2   at 1456 (hypotheticals are useful only if they are supported

3   by medical evidence and include all of the claimant's

4   impairments).

5        Additionally, the ALJ failed to address the vocational

6   expert's answer to questions posed by claimant's attorney,

7   that there were no jobs available for a person who would

8   likely miss at least four days of work a month, as Dr. Francis

9   thought likely, because employers typically tolerate only one

10  unscheduled absence per month.  Tr. at 440-1.  The ALJ also

11  did not address his stipulation, in response to a question,

12  that most, perhaps all, employers do not permit lying down on

13  the job.  Tr. at 443.  Had the ALJ considered these answers,

14  the ALJ would have had to decide at step five that there were

15  no jobs plaintiff could perform, and she was thus disabled and

16  entitled to benefits.

17       In cases where the record is fully developed and further

18  administrative proceedings would serve no purpose and merely

19  delay the award of benefits, the court has the discretion to

20  remand for an award of benefits.  <u>Lewis</u>, 236 F.3d at 518;

21  <u>Rodriguez</u>, 876 F.2d at 763; <u>Gallant</u>, 753 F.2d at 1453-54

22  (reversing and remanding for benefits because a person who

23  cannot walk, sit or stand for over an hour without pain does

24  not have the capacity to do most jobs in the economy).

25  Because the ALJ improperly discredited Dr. Francis' opinion

26  that plaintiff should not work, the subjective testimony of

27  plaintiff and her husband and the hypotheticals establishing

28  the absence of jobs for plaintiff, he committed legal error.

                                  12

1   There are no outstanding issues to be resolved before a

2   determination of disability can be made, and it is clear from

3   the record that the Commissioner would be required to find

4   plaintiff disabled were the legal errors remedied and the

5   evidence credited.  Smolen, 80 F.3d at 1292.  Accordingly, **IT**

6   **IS HEREBY ORDERED** that plaintiff's motion for summary

7   judgment is **GRANTED** and defendant's cross-motion for summary

8   judgment is **DENIED**.  The case is remanded to the

9   Commissioner, with instructions to calculate and pay

10  plaintiff disability benefits.  Defendant shall submit an

11  appropriate form of judgment forthwith.

12  DATED:  June 15, 2006

13  _____

14  Bernard Zimmerman
    United States Magistrate Judge

15  G:\BZALL\-BZCASES\HERNOKO\SJBZ.wpd

16

17

18

19

20

21

22

23

24

25

26

27

28

13